UNITED STATES DISTRICT
COURT DISTRICT OF
MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.               ) | Criminal No. 20-CR-10071-ADB |
| ) | |
| RICO PERRY        ) | |

### Defendant's Second Emergency
### Motion for Release from Detention
### And Motion to Re-Open Detention Hearing

Now comes the defendant, Rico Perry, and respectfully requests that this court re-open his detention hearing and reconsider its detention order issued on April 29, 2020. In support of this motion the defendant is submitting additional information relative to his enhanced risk from COVID-19 (due to asthma), as well as changed circumstances relative to the recent spread of COVID-19 infections within the Plymouth County Correctional Facility.

I.  Procedural History

Mr. Perry was arrested and charged in this case via complaint on January 29, 2020. A probable cause and detention hearing was conducted over two dates: February 3, 2020, and February 5, 2020. After the court found probable cause, the defendant stipulated to detention, pending an interview with the Probation Department. This interview was conducted on February 11, 2020.

Due to the emerging coronavirus crisis, Mr. Perry filed an Emergency Motion for Release from Custody, on April 10, 2020. This motion was opposed by the government. On April 21, 2020, the Court conducted a hearing, and took the defendant's motion under advisement. On April 29, 2020, the Court denied the defendant's motion for release and ordered the defendant detained, stating in part: The defendant does not cite any special, extraordinary or changed medical

1

circumstances that would make him more vulnerable or more at risk than other detainees in the institution where he is being detained. Therefore this court finds that release is not warranted *at this time* and Docket Entry # 51 is DENIED. (Emphasis added). Mr. Perry respectfully submits that new information and changed circumstances warrant this Court in reconsidering its ruling.

II.   The Defendant Has A Documented History of Asthma Putting Him At Greater Risk From COVID 19.

At the time of Mr. Perry's initial detention hearing, undersigned counsel attached as exhibits two inhaler prescriptions to establish Mr. Perry's history of asthma. During the hearing, the Court specifically asked counsel whether I was in possession of Mr. Perry's medical records form the jail, which at that time, I was not. Post detention order, I have since obtained additional documentation to substantiate Mr. Perry's condition as an asthmatic. Attached hereto please find the following: Exhibit One: medical records from Plymouth County Correctional Facility indicating that Mr. Perry has asthma, and identifying medications currently prescribed. Exhibit Two, letter from Sheena Perry, MSN, BSN, RN, CNE, confirming Mr. Perry's family and personal history of asthma. Exhibit Three, medical records from Prison Health Services at Dartmouth House of Correction dated 2007, indicating Mr. Perry suffers from asthma. Exhibit Four, medical record from Mass General Hospital indicating Mr. Perry suffers from asthma. Exhibit Five, Affidavit of Rico Perry entitled The Medical and History of Asthma Part 2.

As an asthmatic, Mr. Perry is at heightened risk from CIVID-19. See Coronavirus Disease (COVID-19) advice for the public: Myth busters, World Health Organization. www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public/myth-busters, ("People of all ages can be infected by the new coronavirus (2019-nCoV). Older people, and people with pre-existing medical conditions (**such as asthma**, diabetes, heart disease) appear to

be more vulnerable to becoming severely ill with the virus." The Center for Disease Control has also warned that people with moderate to severe asthma may be at higher risk from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. In light of Mr. Perry's condition of asthma, and the increased risk that poses with respect to COVID-19, the defendant respectfully requests that he be released on the conditions set forth below.

> III. Changed Circumstances At the Plymouth County Jail.

At the time of the first detention hearing in this case, the government supported its opposition in part with a "Declaration" submitted by Sheriff Joseph McDonald. According to Sheriff McDonald: "As of 10am on April 15, there [were] 731 inmates and detainees at the Facility. Not one of them has tested positive for COVID-19. That is no longer the case. As of this filing, at least one inmate has tested positive. See Exhibit Six, Special Master's Weekly Report as of May 17, 2020. Additionally, Sheriff McDonald's Declaration stated that out of 877 full and part time workers, only one employee had tested positive for COVID-19. However, the Special Master's report now shows that six employees have tested positive. It should also be noted that despite an inmate population of approximately 650, and a staff of over 800, only *35 tests had been conducted* by the Plymouth jail. This staggering failure in testing essentially renders the data useless as far as determining how many infections are actually inside the jail, and exposes every inmate and all of the staff to increased risk.

On or about March 27, 2020, the CDC issued guidance on the management of COVID-19 in correctional and detention facilities. See https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html However, the Plymouth County Correctional facility has failed to implement many of the CDC recommendations as demonstrated by comparing CDC guidance with the limited precautions outlined by Sherriff

McDonald in his Declaration.  As a result, the conditions inside the jail are dangerous for all inmates, and even more so for asthmatics like Mr. Perry.  See <u>Exhibit Seven</u>, Affidavit of Dr. Josiah Rich, MD MPH (filed originally in connection with 1:20-cv-10753-LTS); Exhibit <u>Eight</u>, Affidavit of Jonathan M. Giftos, M.D. (filed originally in connection with 1:20-cv-10753-LTS; <u>Exhibit Nine</u>, Affidavit of Regina Celeste Laroque, MD, MPH (filed originally in connection with 1:20-cv-10753-LTS).  In addition, although the Plymouth Jail is aware that Mr. Perry has asthma, and is treating him for asthma, the jail has not taken any special precautions to protect him from COVID-19.  See <u>Exhibit Ten</u>, Affidavit of Rico Perry entitled The Condition of Plymouth Part 1.

    IV.    <u>Mr. Perry Should Be Released Because Conditions Will Reasonably Assure His Reappearance In Court And The Safety Of The Community.</u>

Mr. Perry respectfully submits that he should be released pursuant to the Bail Reform Act, 18 U.S.C. § 3142; *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988). As the Supreme Court held in *United States v Salerrno*, 481 U.S. 739 (1987), in our society liberty is the norm, and detention prior to trial… is the exception.  It is only a limited group of offenders who should be detained pending trial.  See *United States v. Shakur*, 817 F.2d 185, 195 (2d Cir. 1987).   Indeed, the Bail Reform Act clearly favors non detention.  See *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992).

Although this case triggers a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142 (e)(3), the law acknowledges that very little is required to rebut that presumption.  A charged offender must only produce some evidence that he does not present a special risk in order to rebut the presumption.  See *United States v. Jessup*, 757 F.2d 378, 385-86 (1t Cir. 1985).  The defendant bears only the burden of production, not the burden of persuasion, and thus is not required to *prove* he would not flee… he would only have to introduce a certain amount of evidence contrary to that

presumed fact.  *Id*. at 380, 383.   So long as the defendant has produced some evidence of any of the § 3142(g) factors, then he has bet his burden to rebut the presumption.  *Id*. at 384.  The government bears the burden of persuasion at all times.  *Id*.

In this case, while Mr. Perry has met his burden, the government cannot establish that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.   *United States v. Ploof*, 851 F.2d 7, 9 (1st Cir. 1988).  Mr. Perry is not a flight risk, nor a danger to the community.  He was born and raised in Boston, MA.  He is a U.S. citizen.  He is currently 32 years old.  He attended school until the eleventh grade.  He has no passport, and has never traveled outside of the country.    Until his detention in this case, he lived with his uncle and his grandmother in greater Boston.  His mother is sixty-two years old, lives in greater Boston and has attended court hearings in this matter.  His father is recently deceased.  Mr. Perry has four brothers and four sisters, all of whom live in greater Boston.

As of July 31, 2019, Mr. Perry had been fully employed by the Industrial Power Group.  See Exhibit Eleven, employment letter.  Prior to his arrest, he had successfully been participating in a drug testing program managed by the Avertest.  See Exhibit Twelve. He was also engaged in counselling for his anxiety.  See Exhibit Thirteen, letter from Jason Sherer, MD.

This Court's detention order relied in part on a number of defaults that appear on the defendant's criminal record.  However, the defendant submits an affidavit attached hereto as Exhibit Fourteen, (The issue of Danger to the Community and Risk of Flight Part 3) stating that in fact he has never defaulted on a case and explaining the circumstances of some default entries on pages four through six of his Affidavit.

Mr. Perry has been in a stable relationship for almost fifteen years with his now fiancé, JL.  JL is gainfully employed with a steady job, and health care benefits.  Together they have two

daughters; a twelve year old and a seven month old. JL has been interviewed by the probation department and provided her address, phone number, and other information. She has agreed to post a bond should one be required and to serve as a third party custodian. JL's apartment has a bedroom with its own bathroom where Mr. Perry could self-quarantine upon release.

Furthermore, the pandemic circumstances we all find ourselves outweigh any theoretical risk of flight or danger that Mr. Perry could pose. As Mr. Perry explains in Exhibit Fourteen, his criminal convictions significantly over-state, mischaracterize, and obfuscate his criminal history. Due to the lack of testing and stealthy spread of COVID-19, Mr. Perry poses a significantly greater threat to inmates and staff at the Plymouth Jail than he would to the community should he be released pursuant to the conditions proposed below.

V.  <u>Defendant's Proposed Release Plan Assure His Appearance In Court And The Safety Of The Community</u>

Mr. Perry proposes the following release plan be implemented in lieu of further detention:

1. That he reside at the residence of JL which is located within approximately ten miles of US District Court, Boston;

2. That he be subject house arrest, with GPS monitoring;

3. That he self-quarantine in the apartment for two weeks after being released:

4. That JL post an unsecured bond in the amount of $10,000.00;

5. That he remain drug and alcohol free with testing;

6. That he refrain from any contact with his co-defendant(s);

7. That he abide by all statutory conditions of release as well as any other additional conditions of release imposed by the Court;

8. That JL will serve as a third party custodian and will notify the court of any infractions.

6

VI.     Conclusion

    Mr. Perry requests a hearing on this motion, and further requests that this Court release him in accordance with the conditions proposed above or upon any additional conditions deemed appropriate by this court.

Respectfully submitted,

Rico Perry, by his attorney,

/s/ Liam Scully___

| | |
|---|---|
| | Liam Scully |
| | Scully & Lagos |
| | 101 Summer St. |
| | Boston, MA  02110 |
| May 26, 2020 | Tel: 617-307-5056 |

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 26, 2020.

*/s/ Liam Scully*
Liam Scully

7