

**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

May 10, 2021

<u>**By E-Mail and ECF**</u>
AUSA Rob Richardson
U.S. Attorney's Office
One Courthouse Way
Boston, MA 02210

   Re: *United States v. Keith Cousin,* **20-cr-10071-ADB-1**
     *United States v. Rico Perry*, **20-cr-10071-ADB-2**

Dear Counsel:

   We write jointly to request the following discovery on behalf of Mr. Cousin and Mr. Perry. All materials are requested by both defendants.

<u>**Investigation Materials**</u>

1. ATF reports containing unredacted report sequence numbers ("Report Number" box in upper right corner of page) and any missing reports from the sequence.

2. The ATF "Case Initiation" report (CP00100) with unredacted BPD report and investigation reference numbers.

3. Transcript of A-V meeting 1 (4 of 4) with "new Bates numbers" as provided for in the Amendment to Protective Order entered on March 1, 2021.  *See* ECF No. 163 ("Amended Order")].   [Note: As you previously indicated, corrections to the transcripts from the prior versions may be appropriate in some cases.]

4. Transcripts of any other meetings or conversations prepared by the government or its agents with "new Bates numbers" as provided for in the Amended Order.

5. An unredacted copy of the "SRT After Action Report" located at CP001124-1129, including but not limited to the names of the "SRT personnel at operation location," the "name(s) of SRT personnel who deployed diversionary devices," and the "name(s) of SRT personnel who utilized less lethal munitions."

AUSA Rob Richardson
May 10, 2021
Page 2 of 9

6. Any policies, procedures, memoranda, or guidance by any federal agency, including the Department of Justice and ATF, concerning use of force by law enforcement during investigations and arrests, including use of firearms (including SAGE Arms SL-6), kinetic energy projectiles (including K03 OC rounds), rubber bullets, plastic bullets, and other forms of weaponry.  Any policies, procedures, memoranda, or guidance concerning documentation that must be completed in connection with law enforcement's use of force is also requested.

7. All cell phone extraction evidence.[1]

8. Unredacted copies of CP0482-85.

9. Copies of all "attachments" referenced in CP0482-83, including:

    a. Extraction Report – Text messages between Cousin and Perry.

    b. Extraction Report – Text messages between Cousin and B[redacted].[2]

    c. Extraction Report – Phone search history and call logs on 1/27/2020.

    d. Extraction Report – Photos of firearms and crack cocaine.

    e. RMV Record – T[redacted] B[redacted].

    f. BOP – T[redacted] B[redacted].

10. Copies of all "attachments" referenced in CP0484-85, including:

    a. Extraction Report – Text messages between Perry and Santos.

---

[1] Counsel for Mr. Perry notes that he received from predecessor counsel electronic files containing phone extraction evidence from two separate devices, (1) GK-881_ATF-2 (iPhone_ATF_Item_2) ("Cousin extraction"), and (2) "GK-882_ATF-3 (iPhone_Item_3) ("Perry extraction"). He has downloaded Cellebrite and is able to download and review the Cousin extraction (though it does not contain a pdf report). However, despite multiple attempts, he is not able to download the Perry extraction.  Please provide all extractions, as well as any Cellebrite pdf reports. To the extent relevant, he notes that he generally use a Mac computer.

[2] These redactions appear in the documents, as produced to defense counsel.

  b. Extraction Report – Text messages between Perry and Burton.

  c. RMV Record – A[redacted] B[redacted].

  d. BOP – A[redacted] [redacted].

  e. Extraction Report – Text messages between Perry and "BG."

  f. RMV Records – L[redacted] G[redacted].

  g. BOP – L[redacted] G[redacted].

  h. Extraction Report – Text messages between Perry and "G[redacted] C[redacted]."

  i. RMV Record – G[redacted] H[redacted].

  j. Extraction Report – Text messages between Perry and "Big Homie."

11. A copy of the recorded conversation between SA Jacobsen and Christopher Santos from February 13, 2020 as described in paragraphs 4, 5, and 7 of CP001101.

12. All T-Mobile Toll Records for Keith Cousin described at CP001039-40 with "new Bates numbers" as provided for in the Amended Order.

13. A copy of all police reports describing the incidents involving Damon Stallings described in paragraph 5 of CP001039-40.

14. A copy of all still photographs and reports concerning the identification of Mr. Perry made by a Massachusetts Department of Corrections employee, including but not limited to production of the name of the employee, as described in paragraph 2 of CP001053.

15. The photograph from the Massachusetts Registry of Motor Vehicles (RMV) alleged to be Mr. Perry allegedly shown by SA Jacobsen to the UC, who identified the individual as present with him at the Hilton Garden Inn hotel on January 8, 2020, as described in paragraph 3 of CP001053.

16. All documents concerning or comprising the "information" referenced in CP00100 that Mr. Cousin "was actively and frequently participating in home

AUSA Rob Richardson
May 10, 2021
Page 4 of 9

invasions and robberies," the identities of the BPD or other enforcement personnel who provided this "information," and the date(s) on which the "information" was provided.

17. All documents concerning or comprising any other communications between ATF and BPD concerning Mr. Cousin, including without limitation notes, emails, and text messages.

18. Documents concerning findings or complaints against law enforcement personnel referenced in the previous two requests, including without limitation their inclusion on any "*Brady* list" maintained by prosecutors.

19. A copy of CP001013 with the October 20, 2019 incident address unredacted.

20. All other BPD reports concerning the October 20, 2019, robbery referenced in CP001013-16.

21. All BPD reports concerning the T-Mobile store robberies on October 27 and August 20, 2019, referenced at, *e.g.,* CP0272.

22. The video of the alleged September, 2019 robbery of Brian Joyce, referenced at CP001045, all reports concerning that robbery, and the exact date on which it occurred.

23. A copy of CP001042 with the BPD incident report number (concerning "shots fired" on November 15, 2019) on the second page unredacted.

24. Any information or documents indicating that Mr. Cousin was *not* involved in uncharged/unsolved crimes referenced in ATF reports and search warrant applications, including without limitation robberies on October 27, October 20, September, and August 20, 2019, and a shooting in November 2019.

25. All BPD FIOs for Mr. Cousin from 2019 to present.

26. All documents concerning the stop, at gunpoint, of Mr. Cousin by law enforcement on or around June-July 2019 in Boston near Woodrow Ave. and Norfolk.

27. The identification of the "BPD [] detective familiar with Cousin" who "corroborated" a description provided by the CW of "Cousin as having a chipped tooth," as described in footnote 2 of CP0346.

AUSA Rob Richardson
May 10, 2021
Page 5 of 9

28. Inspection of the beanie with the camera worn by the UC on January 28, 2020.

29. Location data provided by the Massachusetts Probation Services Electronic Monitoring Program ("ELMO") from January 28, 2020 of a phone attributed to Christopher Santos.

30. Please confirm whether multiple references to a January 8, 2020 meeting in CP001053 are actually referring to the January 7, 2020 meeting (*i.e.,* the January 8 date is an error).

31. All documents concerning authorization to conduct a fictitious stash house robbery "sting" operation in this case.

32. With regard to Special Agent Jacobsen, all material owed under *Giglio v. United States,* 405 U.S. 150 (1972).

## Third-Party Materials Obtained by Search Warrant and/or Subpoena

33. Completed search warrant returns, inventories, execution reports, and all data obtained in connection with each and all of the search warrants issued in this case (19-mj-05397, 20-mj-05000, 20-mj-2176, 20-mj-2193, 20-mj-2194, 20-mj-2197, 20-mj-2200), including without limitation all cellular phone location data.

34. A complete copy of *all* search warrant materials related to 20-mj-2194 (including application, affidavit, warrant, and return), which was not included in the April 26, 2021 production.

35. All of the T-Mobile call records for Mr. Cousin's phone provided to the government on or around December 2, 2019 (CP001039) used to create the "frequency summary" (CP001118).

## Information Regarding the Confidential Informant (CI #27698)

36. A complete criminal history for the CI.

37. All information and all documents concerning any monetary payments or other promises, rewards, or inducements from law enforcement or prosecuting authorities to the CI or third parties for the benefit of the CI.

AUSA Rob Richardson
May 10, 2021
Page 6 of 9

38. All documents concerning or comprising agreements between the CI and law
    enforcement agencies or prosecuting authorities.

39. Copies of all instructions provided to the CI regarding rules that apply to the
    CI's status as an informant.

40. All documents concerning or comprising authorization to use, terminate, or
    reinstate the CI, including without limitation any background investigation.

41. All documents and information concerning or comprising any periodic reviews
    of the CI's status.

42. All information concerning any alleged misconduct or violation of agency
    rules by the CI while working as a CI, including without limitation
    unauthorized activity, use of illegal drugs, or misuse of government property.

43. All information regarding the CI's use of drugs and/or history of mental
    illness, including the name of any facility where the CI received treatment for
    either substance abuse or mental illness, and any steps taken by law
    enforcement to monitor or address the CI's substance abuse or mental illness
    while working as a CI.

44. All information and all documents concerning or comprising communications
    between the CI and law enforcement, including without limitation the dates
    of all such communications, text messages, and agent notes of debriefings or
    phone calls.

45. A list of all meeting dates between the CI and agents in connection with this
    investigation.

46. All reports prepared in connection with meetings between the CI and agents
    concerning this investigation.

47. To the extent not incorporated into a report, all notes prepared by agents
    concerning meetings with the CI.

48. The CI's phone number(s) during the time of the investigation and the name
    of the service provider.

49. Any and all information provided by the CI to the government concerning the reasons why he and Cousin were "not on good terms," as discussed during the CI's recorded conversation with Cousin on the application "FaceTime" on November 26, 2019.

## Use of Fictitious Stash House Robbery Stings

50. Any instructions, manuals, circulars, field notes, correspondence, or other guidance, whether internally at ATF or from the Department of Justice, about when and how to conduct fictitious stash house sting operations, whom to target, what procedures must be followed, how to determine the quantity of drugs posited in the fictitious crime, whether to introduce the need for weapons and if so, what kind of weapons, and how to ensure that the targets do not seek to quit or leave before an arrest can be made. Please include any directions or instructions given to agents, undercover agents, and informants, as well as supervisory personnel at ATF.

51. A list of all fictitious stash house sting operations conducted by or with any federal law enforcement entity in the Districts of Massachusetts, Rhode Island, and New Hampshire, from 2011 to the present, including: the name and dates of the operation; the authorizing federal entity; the race of the informant(s) involved; the race of the undercover agent(s) involved; the race of the targets or suspects; the names of any cases prosecuted as a result of such operations; and the race of the defendant(s). For any conducted in Massachusetts, please provide the geographic area/city/neighborhood where the operation was conducted.

52. Please provide a list of all prosecutions by the U.S. Attorney's Office for the District of Massachusetts of *actual* stash house robberies (non-fictitious), from 2011 to the present and provide the race of each defendant.

53. Please provide the same information for all Hobbs Act robbery prosecutions by the U.S. Attorney's Office for the District of Massachusetts, from 2016 to the present (case name and race of the defendant(s)).

54. Please provide the same information for all *bank* robbery prosecutions by the U.S. Attorney's Office for the District of Massachusetts, from 2016 to the present.

AUSA Rob Richardson
May 10, 2021
Page 8 of 9

55. A log or list showing the number of active confidential informants used by the ATF in Massachusetts, from 2016 to the present, their race, and the zip code(s) or neighborhood(s) in which they operate(d).

56. A log or list showing the number of Caucasian informants used by the ATF in Massachusetts from 2016 to the present, the neighborhood(s) in which they operate(d), the number of suspects or targets about whom they have provided information, and the race of each such suspect or target.

57. The race of the CI in this case.

58. A log or list indicating the race of every target, suspect or defendant about whom this CI has offered information to federal law enforcement.

59. A log or list of all fictitious stash house sting operations in which the UC in this case – Special Agent Valles – has participated and the race of each of the individuals targeted.

60. To the extent UC Valles is the same individual as the "Agent Valles" in *United States v. Brown*, 299 F. Supp. 3d 976, 1017 (N.D. Ill. 2018), who explicitly and "regrettabl[y]" used race as a factor in soliciting participants, please provide: any communications with or instructions given to Agent Valles regarding his use of race as a distinguishing characteristic in *Brown*, and any supervision of his subsequent operations to ensure that he cease using race as a factor.

61. All information and documents concerning any complaints or allegations of misconduct made against UC Valles over the course of his career.

62. Any documents bearing on whether and how supervisors and managers of the national and Massachusetts ATF sought to determine whether or not their agents and informants were targeting persons on the basis of their race, color, ancestry or national origin for these fictitious stash house robbery cases, and what actions the national and Massachusetts ATF took to ensure that agents and/or informants were not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

63. Any instructions given to Assistant United States Attorneys regarding the responsibilities of Assistant United States Attorney to ensure that

AUSA Rob Richardson
May 10, 2021
Page 9 of 9

defendants in cases brought by the United States Attorney for the District of
Massachusetts have not been targeted due to their race, color, ancestry or
national origin, and specifically that those persons who are defendants in
fictitious stash house cases in which ATF was the investigatory agency have
not been targeted due to their race, color, ancestry or national origin.

64. Any instructions given to the CI and the UC regarding this fictitious stash
house sting operation.

65. Any records concerning the determination that the UC should tell Mr. Cousin
that the fictitious guards at the fictitious stash house would be armed.

66. Any records concerning the determination that the fictitious robbery should
involve two kilos, as opposed to some other quantity.

67. Any records concerning the determination that the UC should tell Mr. Cousin
and Mr. Perry that they needed to break down the two kilos of cocaine
because of the stamps or seals on them.

Please feel free to contact us for any necessary clarifications and/or to narrow
any areas of disagreement.

Thank you for your attention in this matter.

Sincerely,

/s/ Amy Barsky

cc:   Clerk, U.S. District Court (via ECF)
      William Fick, Esq.
      David Grimaldi, Esq.